UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

M.O.C.H.A. SOCIETY, INC., et al.,

                              Plaintiffs,

            -vs-                                        98-CV-99C

CITY OF BUFFALO, et al.,

                              Defendants.

---

APPEARANCES:    THOMAS S. GILL, ESQ., Frederick, Maryland, for Plaintiffs.

                       HODGSON RUSS LLP (ADAM W. PERRY, ESQ. and JOSEPH S. BROWN, of Counsel), Buffalo, New York, for Defendant City of Buffalo.

In Complaint "B" in this case, plaintiffs claim that the City of Buffalo's policies and procedures for promoting Buffalo firefighters to the rank of lieutenant, including the use of a state-wide promotional examination given in 1998 (the "Lieutenant's Exam"), has resulted in intentional discrimination against African-American firefighters in violation of the Equal Protection and Due Process Clauses of the Constitution, 42 U.S.C. §§ 1981, 1983 and 2000e (Title VII), and New York State Human Rights Law (*see* Item 54). The City has now moved for partial summary judgment (Item 259) pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing several of plaintiffs' claims set forth in Complaint "B," and plaintiffs have cross-moved for summary judgment (Item 266) in their favor on their Title VII claim. Oral argument of these motions was held on October 22, 2007.

      For the reasons that follow, both motions are denied.

## **BACKGROUND**

The factual and procedural background of this litigation has been set forth at length in the court's several prior orders, and is well known to the court and to the parties. It is summarized briefly here as follows.

This action was commenced in February 1998 by Men of Color Helping All Society, Inc. ("M.O.C.H.A."), and several individual City of Buffalo firefighters, seeking declaratory relief and damages on their own behalf and as representatives of a proposed class of all African-American firefighters employed by the City during the three prior years. The original complaint contained several factual allegations relating to two separate employment practices--namely, (1) the City's policy for promoting firefighters to the rank of lieutenant, and (2) the drug testing policy implemented by the City and the firefighters union, Buffalo Professional Firefighters Association, Local 282.

In lieu of answering the complaint, the City moved to dismiss pursuant to Fed. R. Civ. P. 12(b). After meeting with counsel, the court determined that the drug testing and promotion issues should be addressed in separate pleadings. Accordingly, in October 1998, plaintiffs filed "Amended Complaint A" dealing with the drug testing policy (Item 24) and "Amended Complaint B" dealing with the promotion policy (Item 25), and the City filed renewed motions to dismiss.

Meanwhile, the City administered the Lieutenant's Exam[1] on March 14, 1998. A total of one hundred seventy-nine White firefighters and eighty-nine African-American firefighters took the Exam. One hundred thirty-three White candidates passed and forty-six failed, for a pass rate of 74.3 percent. Thirty-eight African-American candidates passed and fifty-one failed, for a pass rate of 42.6 percent. In September 1998, the City released a list of one hundred eighty-one firefighters who passed the 1998 Lieutenant's Exam and were certified as eligible for promotion.

In Amended Complaint B, plaintiffs made several allegations in support of their claim that the City's promotion policy discriminates against African-American firefighters. Specifically, plaintiffs alleged that the City uses a subjective point system to establish the list of firefighters eligible for promotion to the rank of lieutenant, and that this system is manipulated to favor White candidates in a number of ways (*see* Item 25, ¶¶ 21-24);[2] that the City unfairly influences the cut-off score by sponsoring White-only training sessions for

---

[1] The Lieutenant's Exam was prepared and scored by the New York State Department of Civil Service pursuant to N.Y. Civil Service Law § 23, which provides in relevant part:

> The state civil service department, upon the request of any such municipal commission, shall render service relative to the announcement, review of applications, preparations, construction, and rating of examinations, and establishment and certification of eligible lists for positions in the classified service under the jurisdiction of such municipal commission.

As noted in this court's order of February 28, 2005 (Item 219) denying plaintiffs' previous motion for partial summary judgment, the Civil Service Department is not a party to this action, but has cooperated with the court and the parties to provide documents and deposition testimony pertaining to the creation, scoring, and analysis of the Exam.

[2] For example, plaintiffs claim that promotion points are based upon (1) seniority, which unfairly favors White firefighters because they are automatically listed ahead of African-Americans upon entering the Fire Department as rookies (*see* Item 25, ¶¶ 22-23), and (2) the time of submission of applications to take the Lieutenant's Exam, which unfairly favors White firefighters because they are allowed to submit their applications as a group and/or are allowed access to the office where the applications are collected when the office is otherwise closed to the public (*see id.* at ¶¶ 24-26).

the Lieutenant's Exam, and by releasing exam questions and subject areas in advance of the exam to White firefighters only (*id.* at ¶¶ 27-28, 30); that "[t]he test itself contains a racial bias which works to the disadvantage of African Americans" (*id.* at ¶ 29); and, that the City manipulates the eligibility list to favor White candidates in a number of ways (*see id.* at ¶¶ 31-34).[3]

Based on these allegations, plaintiffs asserted causes of action for violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment (First and Second Causes of Action), 42 U.S.C. §§ 1981 and 1983 (Third Cause of Action), 42 U.S.C. § 2000e, *et seq.* (Fourth Cause of Action), and the New York Human Rights Law, N.Y. Executive Law § 296 *et seq.* (Fifth Cause of Action), seeking declaratory relief, compensatory and punitive damages, and attorney's fees.  In October 2000, having retained new counsel, plaintiffs were allowed leave to file Second Amended Complaints "A" and "B" to add causes of action pursuant to 42 U.S.C. § 1985 (conspiracy to violate civil rights) and N.Y. Executive Law § 296(6) (aiding and abetting violations of the N.Y. Human Rights Law).  Once again, the City moved to dismiss both complaints.

In July 2001, upon obtaining information that the City planned to use the 1998 eligibility list to promote twenty-four firefighters to the rank of lieutenant, plaintiffs filed a motion for a preliminary injunction to prevent the promotions from going forward.  After receiving and reviewing the parties' submissions and hearing oral argument, the court found that plaintiffs had demonstrated neither a likelihood of irreparable harm in the

---

[3] For example, plaintiffs claim that firefighters eligible to retire have been encouraged to remain on duty until a new eligibility list comes out, preventing appointments to eligible African-Americans (*see* Item 25, ¶ 32); that White firefighters hired as provisional employees are given seniority status over African-Americans hired outright (*see id.* at ¶ 33); and, that the City has unfettered discretion to simply refuse to promote African-Americans from the eligibility list when positions become available (*see id*. at ¶ 34).

absence of injunctive relief, nor a substantial likelihood of success on the merits, and denied plaintiffs' motion. The court stated:

> The essential problem here is the absence of proof. There is some proof to indicate, in a preliminary way, that the 1998 promotion exam disparately impacted Black candidates for promotion. However, there is nothing in the record to indicate whether the promotion exam of 1998 was adequately job-related or not. If the 1998 promotion exam is eventually proved to be job-related–or "valid"–then the City will succeed in defeating plaintiffs' claims of discrimination . . . .

(Item 93, pp. 5-6) (citing 42 U.S.C. § 2000e-2(k)(1)).

The court then took up the City's motions to dismiss the Second Amended Complaints. In an order entered March 27, 2002 (Item 109), the court granted the City's motions to the extent they sought dismissal of plaintiffs' conspiracy claims under 42 U.S.C. § 1985, plaintiffs' claims for punitive damages against the City and the individual City defendants sued in their official capacities, plaintiffs' Title VII claims against individual City defendants Cornelius Keane and John Sixt, and plaintiffs' claims against the Buffalo Fire Department as a separate entity. The court denied the motions to the extent they sought dismissal of plaintiffs' claims under §§ 1981, 1983, and Title VII.

Discovery proceeded slowly, punctuated by extensive motion practice--including a motion by plaintiffs for partial summary judgment seeking a ruling that, as a matter of law, the City's use of the 1998 Lieutenant's Exam had a disparate impact on African-American firefighters, and that the City had failed to prove the Exam was "job related for the position in question and consistent with business necessity" as required under Title VII. Plaintiffs relied upon the opinion contained in the expert report of Dr. Kevin R. Murphy, which was presented for the first time in connection with the motion for partial summary judgment. In response, the City cross-moved for relief pursuant to Fed. R. Civ. P. 56(f), arguing that

the motion was premature because both expert and fact discovery was ongoing. The City also argued that there were genuine issues of material fact precluding summary judgment with respect to the job-relatedness/business necessity determination, relying on the job analysis and deposition testimony of Dr. Wendy J. Steinberg and Paul Kaiser, the New York State Department of Civil Service employees who were principally responsible for creating the Exam.

In an order entered on March 14, 2005 (Item 219), the court denied plaintiff's motion and granted the City's cross-motion, essentially adopting the approach suggested by the City to allow a reasonable opportunity for further discovery to assess the opinions expressed by Dr. Murphy in his expert report, and to determine whether to present opposing expert opinions as to the validity of the Lieutenants' Exam. The court also found it

> readily apparent from the parties' submissions that there are genuine issues of material fact precluding summary judgment in plaintiffs' favor at this stage of the proceedings, even without considering any facts sought by the City through further discovery. This is best evidenced by the stark contrast between the deposition testimony of Dr. Steinberg and Mr. Kaiser indicating that (at least in the assessment of the Department of Civil Service) the Lieutenant's Exam is demonstrably related to job performance, and Dr. Murphy's conclusion in his expert report that the Exam is not valid for the purpose of making decisions about promotions to the position of Fire Lieutenant. Clearly, resolving this dispute in the manner suggested by plaintiffs would require the court to credit Dr. Murphy's opinion over those of Dr. Steinberg and Mr. Kaiser, which it cannot do.

(Item 219, p. 10).

In accordance with the court's direction, the parties submitted a stipulated discovery order (approved by the court on July 18, 2005) establishing a schedule for the completion of all remaining fact and expert discovery pertaining to the matters raised in Complaint "B"

(*see* Item 228). The order also contemplated renewed motions for summary judgment, as well as the scheduling of a further settlement conference, once discovery was completed. The City then took the depositions of named plaintiffs Willie Broadus, Robert Grice, Walter Jones, Victor Muhammad, William Raspberry, and John Tucker.

Upon expiration of the deadline for the City to identify expert witnesses and to produce expert reports, plaintiffs filed yet another motion to compel, which the court took up at a meeting with counsel on May 17, 2007. During that meeting, counsel for the City advised that it did not intend to offer an expert witness to testify as to the job-relatedness or consistency with business necessity of the 1998 Lieutenant's Exam. Accordingly, the court set a schedule for the current round of summary judgment motions.

In its motion for partial summary judgment,[4] the City contends that prevailing Second Circuit case law precludes plaintiffs from bringing a § 1981 claim against a municipality, and that this claim must be dismissed in any event because the depositions of the named plaintiffs have revealed no concrete admissible evidence of any of the acts of intentional discrimination alleged in the complaint.[5] In response, plaintiffs contend that genuine issues of material fact remain with respect to whether the City's use of the 1998 Exam as the sole determining factor in creating a promotion eligibility list amounted to a

---

[4] As pointed out by the court during oral argument, the City did not submit in connection with its motion a statement of material facts as to which it contends there is no genuine issue to be tried, as required by Rule 56.1 of the Local Rules of Civil Procedure for the Western District of New York. However, given the nature of the City's argument (*i.e.*, that discovery has not disclosed any evidence to support the acts of intentional discrimination alleged in the complaint), and in the absence of any showing of prejudice to plaintiffs, the court does not deem this failure to constitute grounds for denial of the motion.

[5] The City's motion also seeks dismissal of plaintiffs' claims of denial of due process and aiding and abetting violations of the New York Human Rights Law. Plaintiffs' counsel has conceded to the dismissal of the due process claim, and his failure to address the City's argument with respect to the state law aiding and abetting claim, in either the response or reply papers, must be deemed an abandonment of that claim.

pattern or practice of intentional discrimination to support the claim for municipal liability under § 1981.

Plaintiffs have also renewed their motion for summary judgment in their favor on the claim that the City's use of the results of the 1998 Exam to generate a promotion list violated Title VII. Plaintiffs argue--as they did in support of their previous motion--that there are no genuine issues of material fact remaining to be tried with respect to the Title VII claim because it is beyond dispute that the 1998 Exam had a disparate impact on African-American firefighters, and because the City has failed to come forward with any proof to rebut Dr. Murphy's assessment that the Exam is not job-related or consistent with business necessity.

Each of these contentions is discussed in turn below.

## DISCUSSION

**1.     The City's Motion:  42 U.S.C. § 1981**

42 U.S.C. § 1981 provides:

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To succeed on a claim under § 1981, plaintiffs must establish (1) that they are members of a racial minority, (2) defendants' intent to discriminate on the basis of race, and (3) discrimination concerning one of the statute's enumerated activities, which include "the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" in the employment setting. 42 U.S.C. § 1981(b); *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000); see also *Patterson v. County of Oneida*, 375 F.3d 206, 224-25 (2d Cir. 2004); *Hawkins v. County of Oneida*, 497 F. Supp. 2d 362, 376 (N.D.N.Y. 2007).

In Second Amended Complaint "B," plaintiffs allege that the City, "[b]y [its] conduct herein alleged, . . . violated 42 U.S.C. §§ 1981 and 1983 . . . " (Item 54, ¶ 62). The City argues that under the prevailing Supreme Court precedent of *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), this claim should be dismissed to the extent it relies upon § 1981 as a basis for relief.

The Supreme Court in *Jett* held that:

> the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Thus to prevail on his claim for damages against the school district, petitioner must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* [*v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978)] and subsequent cases.

491 U.S. 701, 735-36.

In 1991, Congress added subsection (c) to § 1981, which states that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Subsequently, a split among the circuit courts developed as to whether this amendment created an implied private right of action against state actors, statutorily overruling the holding in *Jett* that § 1983 provides the exclusive federal remedy against municipalities for

violation of the rights enumerated in § 1981. *See Bond v. City of Middletown*, 389 F. Supp. 2d 319, 327-28 (D.Conn. 2005) (citing cases). As noted in *Bond*, the Second Circuit has not made an express finding on this issue. *Id.* at 328 (citing *Anderson v. Conboy*, 156 F.3d 167, 178 n.19 (2d. Cir.1998).

This court likewise finds no need to rule on the question as to whether the addition of subsection (c) has altered the holding in *Jett* that § 1983 provides the sole remedy for a municipality's violation of the rights set forth § 1981. As recognized by the Second Circuit, whether the municipal defendant is sued for discrimination under § 1981 or § 1983, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett* and *Monell*).

> To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so "persistent or widespread" as to constitute "a custom or usage with the force of law," or that a discriminatory practice of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials . . . ."

*Id.* (quoting *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870, 871 (2d Cir. 1992).

In this case, plaintiffs have come forward with statistical proof, as well as the proffered expert testimony and test validation analysis of Dr. Murphy, to support their claim that the City has engaged in a policy, custom, or practice of discrimination by using the results of the 1998 Lieutenant's Exam as the basis for promotions despite having knowledge that the Exam had a discriminatory impact on African-American firefighters (*see, e.g.*, Plaintiffs' Local Rule 56.1 Statement, attached to Item 267, at ¶¶ 8-12, 16, 17,

and related exhibits).  Plaintiffs also rely on Dr. Murphy's report and other facts discovered during the course of this litigation to support their claim that, notwithstanding its knowledge of discriminatory impact, the City has taken no steps to determine whether the 1998 Exam was valid--*i.e.*, job-related and consistent with business necessity (*see, e.g., id.* at ¶¶ 18-25, and related exhibits).  Based on these facts, which must be viewed in the light most favorable to plaintiffs when considering the City's summary judgment motion, *see Ghent v. Moore*, ___F. Supp. 2d___, 2007 WL 3101050, at *2 (W.D.N.Y. October 23, 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), a reasonable jury could find that the violation of plaintiffs' rights protected by § 1981 was caused by a municipal custom or policy within the meaning of *Monell*, *Jett*, and *Patterson*.

The City also seeks dismissal of plaintiffs' § 1981 claim on the ground that the depositions of the named plaintiffs have revealed no admissible evidence of any of the discrete acts of intentional discrimination alleged in the complaint, such as (for example) the City's sponsorship of training sessions for Whites only, or allowing White firefighters to submit applications on behalf of others in order to gain an unfair advantage in determining eligibility list rankings.  However, the Second Circuit has repeatedly cautioned that, in employment discrimination cases where the defendant's intent is at issue, summary judgment is ordinarily inappropriate because "[a] victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence."  *Rosen v. Thornburgh*,  928 F.2d 528, 533 (2d Cir. 1991) (citations omitted); *see also Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting

summary judgment to an employer when, as here, its intent is at issue."); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) ("A finding of discriminatory intent is a finding of fact . . . ."). Thus, while the deposition testimony cited by the City may be inadequate to fully establish facts supporting each of the discrete acts of discrimination alleged in the complaint, the court is not in the position to rule as a matter of law that plaintiffs are precluded from relying on the testimony of these individuals as circumstantial evidence in support of their § 1981 claim.

In any event, as already discussed, the information set forth in the statistical proof and expert report proffered by plaintiffs amply demonstrates the existence of genuine issues of material fact upon which a reasonable jury could find in plaintiffs' favor on their claim that the City engaged in a pattern or practice of intentional discrimination involving the benefits, privileges, terms, and conditions of the contractual relationship in the employment setting. For these reasons, the court finds that the City is not entitled to summary judgment dismissing plaintiffs' § 1981 claim.

**2.     Plaintiffs' Cross-Motion**

Plaintiffs have also renewed their motion for summary judgment in their favor on their Title VII claim. According to plaintiffs, it is beyond dispute that the 1998 Lieutenant's Exam had a disparate impact on African-American firefighters, and the City has not only failed (after nearly ten years of litigation) to produce any proof that the Exam was job-related and consistent with business necessity, but has in fact waived its right to provide any expert testimony to rebut Dr. Murphy's opinion in this regard.

In essence, plaintiffs ask the court to revisit its ruling in the March 14, 2005 order denying their prior motion for summary judgment. Specifically, the court found in that order that the matters discussed in the job analysis documents and deposition testimony provided by Dr. Steinberg and Mr. Kaiser (the State Department of Civil Service employees who created the 1998 Exam) stood in "stark contrast" with the opinions expressed by Dr. Murphy in his expert report, raising genuine issues of material fact with respect to the validity of the 1998 Exam which precluded summary judgment in plaintiffs' favor on their Title VII claim.

Notwithstanding the City's decision to forego engaging its own expert to rebut Dr. Murphy's validity assessment, the court cannot agree with plaintiffs' assessment that, as a matter of law, the City has failed to meet its burden of proof on the "business necessity and job relatedness" test of 42 U.S.C. § 2000e-2(k)(1)(A)(i). Expert testimony may be the preferred means for the City to meet its burden of persuasion at the second stage of the disparate impact determination, but it is not the exclusive route; what is required is a showing "by professionally acceptable methods" that the Exam is "predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated." *Albemarle Paper v. Moody*, 422 U.S. 405, 431 (1975) (citing EEOC Uniform Guidelines, 29 C.F.R. § 1607.4(c)); *Gulino v. New York State Educ. Dept.*, 460 F.3d 361, 383-84 (2d Cir. 2006) (observing that, in deciding whether a test has been properly validated, courts ordinarily rely on "two sources of expertise"--the testimony of test validation experts, and the Uniform Guidelines).

In short, based on the matters submitted in connection with plaintiffs' renewed motion, plaintiffs have failed to meet their summary judgment burden of showing-- "that is, pointing out to the district court--that there is an absence of evidence to support the [City]'s case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with respect to the issue of business necessity and job-relatedness under Title VII. To the contrary, as it did in response to plaintiffs' previous summary judgment motion, the City has come forward with sufficient evidence supporting its position on this issue for a jury to return a verdict in its favor. This is all that is required to defeat plaintiffs' motion for summary judgment.

## **CONCLUSION**

For the foregoing reasons, the City's motion for partial summary judgment (Item 259) and plaintiffs' cross-motion for summary judgment (Item 266) are both denied.

A telephone conference with counsel will be conducted on Friday, November 30, 2007 at 10:15 a.m. to discuss a schedule for oral argument of plaintiffs' renewed motion for class certification, and for trial.

So ordered.

    \s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: November  9  , 2007
p:\opinions\98-99.nov907