UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

M.O.C.H.A. SOCIETY, INC., et al.,

                                Plaintiffs,

        -vs-                                            98-CV-99C

CITY OF BUFFALO,

                                Defendant.

In an order entered on January 3, 2004 (Item 192), this court denied plaintiffs' motion for certification of a class in Complaint "B" in this action, without prejudice to renew at an appropriate time at or near the close of discovery. Plaintiffs have now renewed the motion, seeking an order pursuant to Rule 23 of the Federal Rules of Civil Procedure certifying the following class:

> All African-Americans who took the civil service examination for promotion to fire lieutenant (Examination) on or about March 14, 1998 and all African-American Firefighters who met the minimum qualifications contained in the notice of that examination, but who did not apply to take the Examination because they had been discouraged from doing so by the City of Buffalo's discriminatory promotion policy and practice.

(Item 258, p. 1). The parties have requested that the court rule on this motion without hearing or argument.

As discussed in the court's several prior decisions and orders in this case, Complaint "B" involves plaintiffs' challenge to the City's use of the 1998 Exam as the sole qualifying factor for promotion to the rank of lieutenant in the Buffalo Fire Department. Plaintiffs assert claims seeking injunctive relief and damages for employment

discrimination under 42 U.S.C. §§ 1981 and 2000e (Title VII) based on theories of both disparate impact and disparate treatment, as well as equal protection and due process claims under 24 U.S.C. § 1983 (and related claims under New York State Human Rights Law). In its November 9, 2007 decision and order denying both parties' most recent cross-motions for summary judgment, this court found that several issues of fact and law remain for trial with respect to both the disparate treatment and disparate impact claims, including (1) whether the City has engaged in a policy, custom, or practice of discrimination by using the results of the 1998 Lieutenant's Exam as the basis for promotions despite having knowledge that the Exam had a discriminatory impact on African-American firefighters, and (2) whether the Exam was "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i).

As noted by the Supreme Court in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982), while a suit (like this one) alleging race-based discrimination, by its very nature, typically involves "classwide wrongs" and "common questions of law or fact," *id.* at 157, it nonetheless may be certified as a class action only if, "like any other class action, . . . the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161. Accordingly, to succeed on their class certification motion, plaintiffs have the burden to demonstrate that this case meets the four prerequisites set forth in Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 132-33 (2d Cir. 2001). In addition, the suit must qualify under at least one of the categories provided in Rule 23(b). *See id.* at 133; *see also Norflet v. John Hancock Life Ins. Co.*, 2007 WL 2668936, at *3 (D.Conn. September 6, 2007). Plaintiffs contend that this case qualifies for certification under Rule 23(b)(2), which provides that, "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2).

In opposition to plaintiffs' renewed motion for class certification, the City contends that plaintiffs have failed to meet the numerosity requirement of Rule 23(a)(1) because there has been no showing that joinder of the 89 African-American firefighters would be impracticable, and that plaintiffs' attempt to expand the class membership by including those firefighters who were deterred from taking the 1998 Exam is too speculative a basis upon which to certify a class. The City also asserts that plaintiffs have failed to present sufficient evidence to satisfy the commonality, typicality, and adequacy requirements of Rule 23(a)(2), (3), and (4), and that the action does not qualify for Rule 23(b)(2) certification because the relief sought is predominately money damages, as opposed to injunctive or declaratory relief. Finally, the City argues–as it did in opposing plaintiffs' previous motion for class certification–that the renewed motion is untimely.

With respect to this latter contention, the court thoroughly addressed the timeliness issue in its January 3, 2004 order, and sees no need to revisit this issue at length here. The thrust of the previous order was that the parties should be allowed to proceed with further discovery and dispositive motion practice on the underlying discrimination claims in the interest of providing the court with a more complete basis upon which to determine whether the prerequisites of Rule 23 have been satisfied. Now that discovery is complete, and the case is set for trial "with a focus on determining whether the 1998 Lieutenant's Exam was 'job related for the position in question and consistent with business necessity' as required under federal statutory and constitutional law" (Item 302, p. 2) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)), the court turns its attention to the class certification issues.

**A.   Rule 23(a)**

   **1.   Numerosity**

Under Rule 23(a)(1), plaintiffs must provide sufficient evidence to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.22[3][a], at 23-63 (3d ed.1 997), *quoted in Trinidad v. Breakaway Courier Systems, Inc.*, 2007 WL 103073, at *4 (S.D.N.Y. January 12, 2007) In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed. 1985)), *cert. denied*, 515 U.S. 1122 (1995).

Where the presumption of numerosity is not applied, courts have considered several factors in determining practicability of joinder, including "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing cases); *see also Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998); *Giullari v. Niagara Falls Memorial Medical Center*, 1997 WL 65862, at *3 (W.D.N.Y. February 5, 1997).

In this case, beyond the fact that the 89 African-American firefighters who took the 1998 Lieutenant's Exam undoubtedly represents a large enough number of class members to presume that the numerosity requirement has been met, consideration of additional pertinent factors leads the court to conclude that joinder would be impracticable. Of primary concern is the avoidance of the multiplicity of actions likely to result if class certification is denied, as well as the "administrative difficulty, delay and distraction involved in requiring each of [eighty-nine] potential plaintiffs to exhaust EEOC procedures, then to intervene, join, or initiate a separate suit . . . ." *Rosario v. Cook County*, 101 F.R.D. 659, 662 (N.D.Ill. 1983). Clearly, given the long pendency of this action, and the common interest of the court and all parties to bring this matter to resolution, considerations of judicial economy weigh heavily in favor of finding impracticability of joinder. As stated in *Rosario*, "[f]orcing the parties to relitigate a common core of issues unnecessarily multiplies the expense of litigation, whereas allowing a suit to proceed as a class action protects

defendants as well as plaintiffs." *Id.* (citing *Swanson v. American Consumer Indus.*, 415 F.2d 1326 (7th Cir. 1969)).

Accordingly, even without including as class members those firefighters who might have been deterred from taking the 1998 Lieutenant's Exam by the City's allegedly discriminatory policies, the court has little difficulty concluding that the proposed class is so numerous that joinder of all members is impracticable.

### 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members. Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (internal citations omitted), *quoted in Trinidad*, 2007 WL 103073, at *5.

As discussed in the court's several prior decisions and orders in this case, plaintiffs' challenge to the City's use of the 1998 Lieutenant's Exam as the sole qualifying factor for promotion to the rank of fire lieutenant has raised several issues of fact and law which remain unresolved after discovery and dispositive motion practice, including (1) whether the Exam, which had an adverse impact on African-American applicants, was "job related for the position in question and consistent with business necessity" and, (2) if so, whether there was an alternative policy or practice available "that would also satisfy the asserted business necessity, but would do so without producing the disparate effect." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 161 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-

2(k)(1)(A)(ii), (C)).[1]  Determination of these issues necessarily involves questions of both fact and law common to all proposed class members.  This is sufficient to satisfy the requirements of Rule 23(a)(2).

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  As stated by the Second Circuit in *Robidoux*:

> Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

*Robidoux*, 987 F.2d at 936-37 (internal citations omitted); *see also Robinson*, 267 F.3d at 155.

Clearly, the discrimination claims in this case are based on the same course of events–namely, the administration of the 1998 Lieutenant's Exam (and its disparate impact on African-American firefighters), and each class member makes the same legal arguments to prove the City's liability for employment discrimination--namely, that the City's use of the test results to determine eligibility for promotion discriminates against African-

---

[1] As mentioned above in the text, this court has also determined that genuine issues of material fact remain for trial with respect to plaintiffs' claim, brought under 42 U.S.C. § 1981, that the City engaged in a pattern or practice of intentional discrimination involving the benefits, privileges, terms, and conditions of the contractual relationship in the employment setting by using the results of the 1998 Lieutenant's Exam as the basis for promotions despite having knowledge that the Exam had a discriminatory impact on African-American firefighters (*see* Item 291, pp. 8-12).

American firefighters in violation of Title VII and 42 U.S.C. § 1981.  Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

The final prerequisite for class certification under Rule 23(a) is that the named party will fairly and adequately represent the interests of the class.  This requirement "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  To satisfy this requirement, plaintiffs must demonstrate (1) that "class counsel is qualified, experienced, and generally able to conduct the litigation," *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (internal citations and quotations omitted), and (2) that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class.  *Marisol A.*, 126 F.3d at 378.

There is no serious dispute as to the qualifications, experience, or litigation abilities of class counsel, and the court finds this prong of the inquiry to be easily satisfied.  However, the City contends that the interests of the named plaintiffs are not consistent and are not representative of the interests of other class members.  For example, based upon the declarations of named plaintiffs submitted in support of the class certification motion (Item 258, Ex. D), only one of the named plaintiffs, Michael Brown, claims to have taken the 1998 Lieutenants' Exam, while the other named plaintiffs who submitted declarations–Robert Grice, Victor Muhammad, William Raspberry, and Walter Jones–did

not take the 1998 Exam because they were allegedly deterred from doing so by their shared belief that the examination discriminated against African-Americans.

Courts considering the issue have often stated that the interests of the representative plaintiffs must be "coextensive with the interest[s] of the entire class" in order to satisfy Rule 23(a)(4). *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562-63 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974); *see also Canady v. Allstate Insurance Co.*, 1997 WL 33384270, at *7 (W.D.Mo. June 19, 1997), *aff'd*, 162 F.3d 1163 (8th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999).  "This does not mean that their positions have to be identical.  Rather, what seems to be intended by these judicial statements is that the representatives and the class members must share common objectives and legal or factual positions to establish adequacy of representation."  7A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE & PROCEDURE § 1769 (2007); *see Evans v. City of Evanston*, 1985 WL 4100, at *5 (N.D.Ill. November 20, 1985) (citing *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), *cert. denied*, 425 U.S. 935 (1976)).  In this regard, Rule 23(a)(4)'s lack of conflict requirement "amounts to little more than an alternative way [of] stating that the plaintiff's claim must be typical of those of the entire class" under Rule 23(a)(3).  *Eisen*, 391 F.2d at 563; *In re Bexar County Health Facility Development Corp. Securities*, 125 F.R.D. 625, 629, 632-32 (E.D.Pa. 1989) (resolution of typicality issue also resolves conflict of interest issue).

As already discussed, the representative plaintiffs' claims in this case are based on the City's use of the 1998 Lieutenant's Exam, which had a disparate impact on African-Americans, to generate an eligibility list for promotion, and the information available to the

court adequately demonstrates that these claims are shared by all African-American firefighters whose ability to gain promotion might have been negatively affected thereby. This is sufficient for the court to find that the interests of the representative plaintiffs are coextensive with the interests of the entire class, and that the named plaintiffs will fairly and adequately represent those interests.

Accordingly, the court finds that plaintiffs have satisfied each of the prerequisites of Rule 23(a).

**B.     Rule 23(b)(2)**

In addition to meeting the requirements of Rule 23(a), plaintiffs must demonstrate that the proposed class falls within one of the three subsections of Rule 23(b). In this case, plaintiffs rely on subsection (2), which authorizes a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The City contends that this case does not qualify for certification under Rule 23(b)(2) because the predominant form of relief sought by plaintiffs is money damages, not injunctive or declaratory relief. According to the City, any injunctive or declaratory relief that could be ordered with respect to the City's use of the 1998 Lieutenant's Exam has effectively been rendered moot by (1) the adoption of a new promotional exam and (2) the expiration of the eligibility list based on the 1998 Exam, leaving plaintiffs' claims for emotional distress damages as the primary relief sought in the case.

Under the prevailing approach in the Second Circuit, a class qualifies for certification under Rule 23(b)(2) if "broad, class-wide injunctive or declaratory relief is necessary to

redress a group-wide injury." *Robinson*, 267 F.3d at 162; *see also Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1112 (E.D.N.Y. 2006). Subsection (b)(2) certification has been found to be well suited for civil rights cases, as well as "institutional, environmental, and law reform cases." *Schwab*, 449 F. Supp. 2d at 1112 (citing 2 NEWBERG ON CLASS ACTIONS § 4:11). However, because Rule 23(b)(2) focuses primarily on injunctive relief, it may become difficult to apply where, as in this case, plaintiffs seek both injunctive relief and money damages. As explained in *Schwab*:

> Money-damage class actions generally fall under Rule 23(b)(3), which imposes additional notice requirements and opt-out rights, as well as stricter predominance and superiority requirements for the protection of absent class members. "[T]he main focus in determining the applicability of subdivision (b)(2) is whether the injunctive relief that is being sought is deemed to be the primary relief, with money damages being only incidental. A suit predominantly seeking money damages does not qualify under [subdivision (b)(2)]."

*Id.* (quoting WRIGHT, MILLER & KANE § 1775); *see also Eisen*, 391 F.2d at 564 ("Subsection (b)(2) was never intended to cover cases like the instant one where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory."); *cf. In re Visa Check/Mastermoney Antitrust Litigation*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) (finding antitrust action qualified for class certification under Rule 23(b)(2) "[b]ecause the highly significant injunctive relief sought here is as important as the damages claimed . . .").

In *Robinson*, a group of African-American employees brought suit under Title VII challenging the defendant's company-wide policy for making employment decisions related to discipline and promotion, alleging discrimination based on both pattern-or-practice disparate treatment and disparate impact. Plaintiffs sought class-wide injunctive and

equitable relief, including back and front pay, and also "compensatory damages for individual members of the class who were allegedly the victims of individual acts of intentional discrimination." *Robinson*, 267 F.3d at 155. The district court denied the plaintiffs' request for Rule (b)(2) class certification of both the pattern-or-practice disparate treatment claim and the disparate impact claim, and rejected as well the plaintiffs' alternative proposal to bifurcate the pattern-or-practice claim between liability and remedial stages and then certify just the liability stage under Rule (b)(2). In doing so, the district court relied on the "bright-line" approach taken by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), which "limit[s] (b)(2) certification to claims involving no more than incidental damages . . . [and] forecloses (b)(2) class certification of all claims that include compensatory damages (or punitive damages) even if the class-wide injunctive relief is the form of relief in which the plaintiffs are primarily interested." *Robinson*, 267 F.3d at 163 (internal quotation marks omitted).

On appeal, the Second Circuit first took up an in-depth review of how class certification analysis in employment discrimination cases was affected by the passage of the Civil Rights Act of 1991, which enhanced Title VII's remedial scheme for disparate treatment claims by authorizing the recovery of compensatory and punitive damages in addition to back pay and front pay, and by affording a jury trial where these additional remedies are sought. The circuit court found that these changes did not foreclose class treatment in employment discrimination cases seeking both injunctive relief and non-incidental money damages, and rejected the Fifth Circuit's "bright-line" approach in favor of a "discretionary" standard for determining whether a claim should be certified for class treatment under Rule 23(b)(2). The court held:

> [W]hen presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must consider the evidence presented at a class certification hearing and the arguments of counsel, and then assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case. The district court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.
>
> Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Id.* at 164 (internal quotation marks, alterations, and citations omitted).

The Second Circuit also found in *Robinson* that the district court abused its discretion when it denied the plaintiffs' request to bifurcate and certify the liability phase of the pattern-or-practice claim for (b)(2) class treatment, *id.* at 167-69, as well as when it declined to certify the disparate impact claim. *Id.* at 169-70. The court stated that, "when as here, a pattern-or-practice claim seeking compensatory damages is pled with a disparate impact claim, the pattern-or-practice claim must be tried first to a jury if there are common factual issues necessary to the resolution of each claim," leaving a bench trial on the disparate impact claim for a later time. *Id.* at 170. In this way, the court can "ensur[e] that any overlapping factual issues between the two claims will have first been tried to a jury in accordance with the Seventh Amendment." *Id.*

Plaintiffs suggest the same approach here. Unfortunately, the court does not have the benefit of an evidentiary hearing, or even the arguments of counsel, to assist in the assessment of facts and circumstances pertaining to the relative importance of the remedies sought by plaintiffs, as contemplated by the Second Circuit in the *Robinson* decision. The court has thoroughly examined the materials submitted in connection with the class certification motion, but finds no further information which would permit the exercise of "informed, sound judicial discretion" in this regard.

Accordingly, the court finds it necessary to defer ruling on plaintiffs' motion for class certification pending the results of a hearing and oral argument addressing the *Robinson* balancing approach for (b)(2) class certification of the claims in this case, the propriety of bifurcation of the liability and remedial phases of the disparate treatment claim, the need for separate trials on the disparate treatment and disparate impact claims, and any other issues discussed in this decision and order that will materially advance the disposition of this litigation. The hearing and argument will take place on Monday, June 16, 2008, at 11 a.m. Any party wishing to submit supplemental written materials in advance of the hearing addressing the certification matters discussed herein shall do so on or before June 2, 2008.

Upon conclusion of the hearing on June 16, 2008, the court will conduct a final pretrial conference, in accordance with Rule 16.1(f) of the Local Rules of Civil Procedure for the Western District of New York, to discuss all matters pertaining to the trial now scheduled to commence on Monday, June 30, 2008. Pretrial statements conforming as nearly as possible with the requirements of Local Rule 16.1(d) shall be filed by both parties on or before June 9, 2008.

So ordered.

                                      \s\ John T. Curtin
                                      JOHN T. CURTIN
                                 United States District Judge

Dated: February  6 , 2008
p:\opinions98-99.jan2808